

Michelle R. Gilboe
Wells Fargo Center
90 S 7th Street, Suite 2800
Minneapolis, Minnesota 55402
Michelle.Gilboe@lewisbrisbois.com
Direct: 612.428.5002

October 13, 2025

File No. 871003.26350

**Via: PACER**

The Honorable Judge Kenneth Karas
United States District Court for the Southern District of New York
300 Quarropas St., Room 521
White Plains, NY 10641-4150

Re: **Cybex's Letter Request for a Pre-Motion Conference for Permission to File for Daubert and Summary Judgment**
*Lynda & Richard Edwards v. Cybex International, Inc.*; Case No.: 7:22-cv-02985-KMK-VR

Dear Honorable Judge Karas:

We represent Defendant Cybex Int'l, Inc. Per Your Honor's Individual Rules of Practice Section II(A) and Dkt. No. 109, Defendant respectfully requests a pre-motion conference to file a Rule 56 motion for summary judgment, and a *Daubert* motion to exclude Plaintiff's liability expert Dr. C.J. Abraham. This is a product liability lawsuit where Plaintiff alleges she was injured while sitting on an exercise machine manufactured by Defendant. She alleges defective design and failure to warn in negligence and strict liability, claiming that due to a defect the foot plate on a leg press machine fell and struck her. Defendant denies that its leg press is defective, and states the incident occurred because Plaintiff failed to fully engage the foot plate at the end of her exercise.

Plaintiffs' liability expert should be precluded because: (i) he has no qualifying experience with respect to design or warnings; and (ii) his opinions are unreliable because they are not based on the facts of the case nor a rigorous scientific analysis.

Summary judgment is also warranted on the design defect claims because: (i) Without competent expert testimony, Plaintiff cannot meet her burden of proof that the leg press was defectively designed or that any such defect caused her injuries; and (ii) if Plaintiff's liability expert is not excluded, he has not offered any evidence of a defect or of a reasonable alternative design as required by New York law. Further, summary judgment should be granted on the failure to warn claims because there is no evidence the warning is the proximate cause of Plaintiff's injury.

**Plaintiff Cannot Establish the Leg Press Was Defectively Designed Without an Expert, but Dr. Abraham's Opinions Do Not Support Her Claims Regardless**

The Honorable Judge Kenneth Karas
Page 2

"Whether the action is pleaded in strict products liability ... or negligence, it is well-settled in New York that the plaintiff in a products liability case bears the burden of establishing 'that a defect in the product was a substantial factor in causing the injury.'" *Groome v. Matsushita Elec. Corp. of Am.*, 92 CV 3073 (NG), 2000 U.S. Dist. LEXIS 4082, at *10 (E.D.N.Y. Mar. 29, 2000) (internal citations omitted); *Gilks v. Olay Co.*, 30 F. Supp. 2d 438, 443 (S.D.N.Y. 1998) ("Under New York law, . . . a plaintiff asserting a products liability claim must prove that defendant's product was both defective and the proximate cause of her injuries."). As a result, the complexity associated with products liability cases often necessitates expert testimony "to elucidate the mechanics of the accident, to indicate the different reconstructions of the sequence that might be inferred, and to describe the physical injuries sustained by each plaintiff and the damaging forces that could be inferred from those injuries." *Caiazzo v. Volkswagenwerk A.G.*, 647 F.2d 241, 251 (2d Cir. 1981) (internal quotation and citation omitted). In this case, the issue of the alleged defect and whether it caused Plaintiff's injury is outside the ordinary knowledge of a lay juror and requires expert testimony.

The Second Circuit has approved district court review of the admissibility of a plaintiff's expert evidence as a prelude to considering whether, after the expert evidence is excluded, the plaintiff will have sufficient evidence left to support a prima facie product defect case. *See Amorgianos v. National R.R. Passenger Corp., d/b/a Amtrak*, 303 F.3d 256, 271 (2d. Cir. 2002) ("it is appropriate for the district court to determine the admissibility of scientific and other evidence and to rely only on admissible evidence in ruling on summary judgment"). In addition to being unqualified to render opinions on the design of an exercise machine (his only relevant experience is being a plaintiffs'-side expert in exercise machine lawsuits), Plaintiff's liability expert Dr. Abraham, must be precluded from proffering his speculative opinions because they fail the reliability requirements of Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Notably, Dr. Abraham's opinions have been excluded or limited approximately 40 times for reasons similar to his failings here.

Dr. Abraham never examined the leg press or an exemplar leg press, conducted any analysis showing the existence of a defect, created any modeling to demonstrate *how* an allegedly defective condition could occur, or attempted to quantify the risk of it occurring and balance it against the utility of the machine. He never read Plaintiff's deposition. He spent only about 8 hours on the case before submitting his report. Ultimately, Dr. Abraham testified that he relied on Plaintiff's own claim that the leg press was defective, i.e., that the mere fact of her alleged injury was proof of a defective design. Indeed, Dr. Abraham's opinion as stated in his report is not that Cybex's 45-degree leg press is defective, but rather a sweeping claim that all 45-degree leg presses are inherently defective.

A product liability claim fails under New York law if plaintiff fails to provide expert testimony regarding a feasible alternative design that would have prevented the injury. *See Zaremba v. General Motors Corp.*, 360 F.3d 355, 358-59 (2d Cir. 2004). Dr. Abraham has not even attempted to provide proof of an alternative safer design. Rather, he proposes that only an entirely different machine – a seated, horizontal leg machine – should be used, testifying that the two different machines provide "the same type of exercise." However, these devices are not comparable because they exercise different muscles in different ways, differ in the stresses they place on the body, and have different utility for various users providing different benefits and training options. This is why gyms often have both of these different types of machines. Dr. Abraham dismissed this at deposition and showed the scope of his analysis:

The Honorable Judge Kenneth Karas
Page 3

> Your expert put out well, we got to do this kind of an exercise, this will exercise this []
> part of the body and that part of the body. They're not interested in that. They're
> interested in just exercising their legs....Most people are lay people. They're not
> people that have the background of your [] expert. They're lay people. What do they
> know about exercising anything but their legs? That's what they go in for. I watched
> them last night.

Here, Dr. Abraham does not provide reference to any authority like a scientific analysis or literature in the area of human factors or exercise science, but rather based this entirely on a few people he saw at the gym the night before his deposition. This exchange underscores both Dr. Abraham's lack of qualifications to be an expert in this case and his utter failure to apply any methodology or scientific analysis to reach his opinions.

Dr. Abraham is further unable to identify any peer-reviewed or scientific literature in support his opinions, did not submit his findings for peer review or publication, and has not demonstrated that his methodology (i.e., concluding a product defect exists without bothering to conduct any testing to validate his hypotheses) is generally accepted by the scientific community to which it belongs. Dr. Abraham relies on nothing more than his own *ipse dixit* to support his opinions that 45-degree leg presses are inherently a defective design. Even if Plaintiff could establish that the Defendant's leg press was somehow problematic, her expert has not provided an alternative design, much less demonstrated that any such design would be safer. Her claim must be dismissed. *See Greenberg v. Larox, Inc.*, 673 Fed. Appx. 66, 69-70 (2d Cir. 2016).

**Plaintiff's Own Expert Establishes that Defendant's Warnings Were Appropriate**

Dr. Abraham opines in his report that there should have been a visible warning facing the user and that because there was not, Plaintiff was not on notice of the risk of misuse of the machine. But there was a warning on the machine facing the user about properly latching the safety device, and Plaintiff testified that she read it. Dr. Abraham's proposed alternative warning only differs from the actual warning in that he uses "Danger!" instead of "WARNING" (which appears on the machine with an exclamation point in a triangle) as the signal word to draw the user's attention. Plaintiff's failure to warn claim is not viable because there is no evidence that Dr. Abraham's proposed warning would have caused her to act any differently. *Figueroa v. Bos. Sci. Corp.*, 254 F. Supp. 2d 361, 370 (S.D.N.Y. 2003) ("to constitute proximate cause, an inadequate warning must be a substantial cause of the events leading to the injury. An act cannot be the 'substantial cause' if the injury would have occurred regardless of the content of defendant's warning."). Once again, Dr. Abraham does not tie any benefits of his proposed warning to any standard, research or analysis. Rather, he proudly testified that "I did that off the top of my head." Dr. Abraham is likewise unqualified to offer opinions on warnings, and his opinion lacks scientific rigor. Fed. R. Evid. 702

The aforementioned arguments constitute the primary grounds for Defendant's *Daubert* motion, and motion for summary judgment, however, Defendant respectfully reserves its right to raise additional arguments in support of its motions.

The Honorable Judge Kenneth Karas
Page 4

The Court will hold a pre-motion conference on 11/ 4 /25, at 11:00

So Ordered
[signature]
10/14/25

Sincerely,

/s/ Michelle R. Gilboe

Michelle R. Gilboe of
LEWIS BRISBOIS BISGAARD & SMITH LLP